Williams, J.
The relator maintains that under the facts adduced he is entitled to a writ to compel the Industrial Commission to allow him compensation for the loss of the sight of his right eye.
The applicable provision of the statute is that part of Section 1465-80, General Code (119 Ohio Laws, 569), which read as follows:
“Partial disability compensation shall be paid as follows: * * *
“(c) In cases included in the following schedule the compensation payable to the employee shall be sixty-six and two-thirds per cent of the average weekly wage, not to exceed a maximum of twenty-one dollars, per week, and shall continue during the periods provided in the following schedule, to-wit: * *
“For the loss of the sight of an eye, 66 2/3% of the average weekly wages during one hundred twenty-five weeks.
“For the permanent partial loss of sight of an eye, 66 2/3% of the average weekly wages for such portion of one hundred twenty-five weeks as the commission may, in each case determine, based upon the percentage of vision actually lost as a result of the casualty, but in no case shall an award of compensation be made for less than 25-per-cent loss of vision.” (Emphasis supplied.)
At the outset we are confronted with the question whether the clause which provides that “in no case shall an award of compensation be made for less than 25-per-cent loss of vision” applies to the total loss of *290 •sight of an eye. Compensation for permanent partial loss of sight of an eye is based upon the percentage of vision actually lost as a result of the injury. On the other hand, compensation for total loss of sight is not dependent upon the percentage of the loss but upon the fact that there was sight which could be lost and was lost completely through the injury. In our judgment the 25-per-cent clause applies to permanent partial but not to total loss of the sight of an eye.
In the proceedings on the claim for compensation filed with the commission, vision was measured according to the table of the American Medical Association, which with explanations may be found in the report of the committee on visual economics of that association. For that report, including table, see May’s Diseases of the Eye (18 Ed.), 221. The Industrial Commission in determining the extent of vision at a given time determines a factual question and is not necessarily bound by any system or plan of eye measurement. Such a plan or system is only an aid to the factual determination. In the instant proceedings the table referred to above was used as a basis for percentages expressed and must be looked to in considering the evidence. The table of the American Medical Association is based'on Snellen’s test types which are universally used. Herzog’s Medical Jurisprudence, 301, Section 405. The table starts with a visual acuity of 20/20 (Snellen notation for distance) and 100 per cent visual efficiency, which are normal or maximum. Test letters are made for distances of 20, 30, 40, 50 feet and other distances and put on a card. An eye is tested for distance by reading the letters on the card at 20 feet. £íIf a person can read the twenty-foot line at twenty feet, he is said to have 20/20 in that eye” and his percentage for visual efficiency is 100. Herzog’s Medical Jurisprudence, 301, Section 405. The *291 table also gives notations for distance showing visual acuity and percentage of visual efficiency for various degrees of subnormal vision down to zero.
The commission found that the relator had “6 2/3 per cent vision in said right eye, unimproved by glasses,” and lost it entirely by his injury.
The finding of the commission did not refer to the eye specialist’s finding of 20/200 for distance or to his finding of inability to read large test types at the near point.
In speaking of the near point the specialist evidently had in mind near-vision testing, which has not been referred to before, and is based on sight at 14 inches, the normal or maximum being 14/14. Test types for near testing are correspondingly small. It may be said parenthetically that notations for near vision also appear on the table referred to above but it is not necessary to mention them further as there is nothing specific in the record regarding them.
“A person whose vision is reduced to 20/200 has still 20% of visual efficiency left * * Herzog’s Medical Jurisprudence, 302, Section 406. The seeming discrepancy in the eye specialist’s finding is not explained in the record but can be cleared up by inferring that relator before his injury had with glasses 20 per cent visual efficiency and without glasses 6 2/3 per cent. Of course in determining vision at a given time the commission must take.into consideration the improvement wrought by the use of fitted eyeglasses.
For the purposes of the instant case the result would be the same if the finding of the commission had been that with fitted eyeglasses the relator had 20-per cent vision in his right eye before the injury. With a visual efficiency of 20 per cent or less an eye would not be useful in industry. In the report of the committee on visual economics referred to, supra, this *292 language is used: “The reduction in visual acuity to 20/200 (6/60 when the metric system is used), or a reduction in visual efficiency to 20 per cent or less, is the accepted standard of industrial blindness.” In addition to the evidence that relator had in his right eye before injury visual acuity of 20/200 which gave visual efficiency of not more than 20 per cent there was the report of the physician, a general practitioner, who made an examination in 1942, that the relator could distinguish “light, moving objects only with right eye.” It was not the purpose of the statute in question here to compensate a workman for the loss of the sight of an eye in which there was no vision useful in industry before his injury.
Evidence in the record of the proceedings on the claim before the commission warranted a finding by the respondent that the relator was industrially blind in his right eye before the injury and, therefore, not entitled, under the statute, to compensation for total loss of sight therein.
A writ of mandamus to compel the commission to allow compensation for the loss of the sight of an eye will be denied where the record shows that the facts adduced warrant a refusal to allow compensation therefor.
The relator is, therefore, not entitled to the writ.

Writ denied.

Weygandt, C. J., Turner and Matthias, JJ., concur.
Zimmerman, Bell and Hart, JJ., dissent.